# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**RYLEN WALKER**

**VERSUS**

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION**

**CIVIL ACTION**

**NO. 25-514-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on the *Motion for Preliminary Injunction* (Doc. 4) filed by Plaintiff Rylen Walker ("Plaintiff" or "Walker"). The Court set a briefing schedule on the motion, but, before an opposition or reply was due, the Court ordered targeted briefing on the issue of irreparable harm. (Doc. 12.) Pocket briefs were filed, both by Plaintiff, (Doc. 17), and by Defendant, National Collegiate Athletic Association ("Defendant" or "NCAA"), (Doc. 18.). Further argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Plaintiff's motion is denied.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

This case involves the intersection of antitrust law and a student-athlete's eligibility. In short, under the current eligibility rules, the time spent by an athlete competing for a junior college ("JUCO") counts toward his four-season limit. (*See Compl.* ¶ 2, Doc. 1.) A federal district court recently held that this rule, coupled with counting JUCO competition as intercollegiate competition, violates the Sherman Act. (*Id.* ¶¶ 37–40 (citing *Pavia v. Nat'l Collegiate Athletic Ass'n*, 760 F. Supp. 3d 527 (M.D. Tenn. 2024)).) In response to that decision, the NCAA issued a blanket waiver under which time spent by student-athletes in JUCOs will not be counted toward

their four-year limit. (*Id.* ¶ 41.) But, that waiver applies only to Division I schools, not to Division II schools. (*Id.* ¶ 42.)

Plaintiff claims this too violates Section 1 of the Sherman Act, 15 U.S.C. § 1. (*Id.* ¶¶ 59–94; *see also id.*, Prayer for Relief ¶ 1, Doc. 1 at 26.) Plaintiff prays that the Court:

> Enter a permanent injunction, in a form that the Court deems just and proper, pursuant to 15 U.S.C. § 26, enjoining Defendant from continuing to violate Section 1 of the Sherman Act by enforcing NCAA Bylaws 14.4.3, 14.4.3.2, and 14.02.12 as to Petitioner, and from enforcing NCAA Bylaw 14.1.3.2.2 to punish Petitioner, Miles College, and any other NCAA Division II member institution for actions taken in compliance with any orders from this Court;

(*Id.*, Prayer for Relief, ¶ 2.) Critically, Plaintiff also prays that the Court "[a]ward Petitioner additional NCAA Division II competition and eligibility to take place in 2025-26 to avoid harm caused by NCAA Bylaws . . . ." (*Id.*, Prayer for Relief, ¶ 3; *see also Pls. Mem. Supp.*, Doc. 4-1 at 2–3 ("Petitioner seeks a preliminary and permanent injunction against the enforcement of these rules, a declaration that the JUCO Eligibility Limitation Bylaws violate antitrust law, *and an order restoring his eligibility to compete in NCAA Division II athletics during the 2025–2026 season*." (emphasis added)).)

The instant motion was filed on June 13, 2025. (Doc. 4.) The Court held a status conference on June 24, 2025, during which time the Plaintiff indicated that he would need a decision on his motion by August 11, 2025. (Doc. 13.) As a result, the Court ordered expedited briefing on the motion. (Doc. 12.)

Additionally, the Court *sua sponte* ordered briefing on the limited issue of whether Plaintiff satisfies his burden with respect to showing irreparable harm. (*Id.* at 1–3.) Plaintiff timely submitted his brief, along with a supplemental affidavit, on June 26, 2025. (Doc. 17.) Defendant NCAA timely responded within forty-eight hours. (Doc. 18.) The Court now takes up that issue.

## II.  RELEVANT STANDARD

"To obtain a preliminary injunction, the plaintiff must show 1) that there is a substantial likelihood that [he] will succeed on the merits, 2) that there is a substantial threat that [he] will suffer irreparable injury if the district court does not grant the injunction, 3) that the threatened injury to the plaintiff outweighs the threatened injury to the defendant, and 4) that granting the preliminary injunction will not disserve the public interest." *W. Sur. Co. v. PASI of LA, Inc.*, 334 F. Supp. 3d 764, 789 (M.D. La. 2018) (citing *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993)).

## III.  DISCUSSION

### A.  Parties' Arguments

#### 1.  *Plaintiff's Pocket Brief (Doc. 17)*

Plaintiff claims that the NCAA eligibility rules "are exceptionally complex and often inconsistently applied[ ]" and that recent developments in the caselaw governing those rules have "significantly shifted the legal landscape and justified Mr. Walker's timing in seeking injunctive relief. . . ." (Doc. 17 at 1.) Plaintiff "has acted diligently in challenging the NCAA's JUCO Eligibility Limitation Rules and promptly seeking preliminary injunctive relief." (*Id.* at 2) According to Walker, the NCAA has suffered and will suffer no prejudice from his timing. (*Id.*)

Plaintiff explains how, on December 18, 2024, the *Pavia* decision was rendered and, in response, the NCAA approved a blanket waiver on December 23, 2024, which allowed an additional one year of eligibility to Division I athletes similar to the *Pavia* plaintiff. (*Id.*) On February 3, 2025, the NCAA considered a proposal to offer a similar waiver to transfers to Division II student-athletes, but it was not approved. (*Id.* at 2–3.) Plaintiff notes that "this lawsuit would not have been filed . . . [h]ad the NCAA approved that proposal at that time." (*Id.* at 3.)

Plaintiff then says that his basketball season ended on March 5, 2025. (*Id.* (citing Walker Supp. Decl., Doc. 17-1).) Thereafter, Plaintiff's coach told him he would be eligible to continue playing basketball if he would compete for a Division I school because of *Pavia* and the waiver. (*Id.*) On March 25, 2025, the NCAA transfer portal opened, and Plaintiff entered same to try to use the *Pavia* waiver. (*Id.*)

On May 19, 2025, Walker was in discussions with a Division I school that was interested in him, but, "after reviewing his academic transcript, [he] was informed that only 67 of his 111 earned credit hours would transfer – rendering it impossible for him to graduate within the waiver period at that institution." (*Id.*) Plaintiff "remains open to transferring to a Division I institution for the 2025–2026 season," but "the academic barrier identified by a Division I member institution made clear that transferring is not likely a viable option and that remaining at Miles College or another Division II institution may be the only realistic path for him to complete his degree." (*Id.*) Plaintiff claims he needs relief from the Court to obtain a scholarship to participate in Division II basketball and finish his degree. (*Id.*)

On May 23, 2025, Plaintiff retained his current counsel, and, on June 13, 2025, Plaintiff filed the instant lawsuit. (*Id.* at 4.) To compete, Plaintiff must be enrolled for the Fall 2025 semester, which begins on August 11, 2025, with the final day to register and add a course being September 10, 2023. (*Id.*)

Plaintiff asserts:

> Mr. Walker's timeline reflects a diligent and reasonable effort to exhaust non-litigation alternatives before seeking court intervention. The evolving legal and administrative context beginning with the *Pavia* decision, the NCAA's inconsistent waiver policies, and the academic transfer limitations created shifting conditions that affect his ability to determine whether and when legal action was necessary or even feasible.

4

> Moreover, since the *Pavia* ruling, other student-athletes across the country have brought lawsuits against the NCAA seeking additional eligibility, resulting in a patchwork of inconsistent outcomes. This legal uncertainty further explains any perceived delay in filing a motion for preliminary injunction.

(*Id.* at 4.)

For all these reasons, Plaintiff argues that he did not "sleep on his rights or delay unreasonably." (*Id*. at 5.) Rather, he "fully explored his options in good faith, responded to rapidly evolving circumstances, and faced a clear and final denial of eligibility from the NCAA with no internal recourse." (*Id.*) Thus, "[t]he timing of his motion is not only justified, but rather, it is precisely what the courts expect when evaluating a request for extraordinary equitable relief: timely action taken when harm becomes concrete, not speculative." (*Id.*)

### 2. *Defendant's Pocket Brief (Doc. 18)*

Defendant counters that Plaintiff "cannot rationalize his delay in seeking injunctive relief by pointing to counterfactuals he believes would have changed his present circumstances, but which ultimately never materialized." (Doc. 18 at 2.) "Plaintiff has long known his college athletic career would come to an end, and it now has[,]" and his delay in bringing the instant litigation warrants a denial of the motion. (*Id.*)

Defendant then pounds the law—both the heightened burden required for mandatory preliminary injunctions and the fact that a substantial delay in seeking injunctive relief can warrant a denial. (*Id.* (citations omitted).)

Next, Defendant highlights the particular delays in this case; not only has Plaintiff delayed seeking relief since the conclusion of the 2024–2025 academic year, but he has also known since at least the 2022–2023 academic year (his first year at Miles College) that he would exhaust his eligibility following this most recent academic year. (*Id* at 2–3.) Defendant continues:

> The Division II ("DII") Manual, which contains the DII eligibility bylaws, is publicly available. *See* NCAA DII Manual, https://www.ncaapublications.com/productdownloads/D225.pdf. Bylaws 7.3.1.5.8 and 7.3.5.8.1 require that each student-athlete submit to the member institution at which he or she is enrolled "a signed statement . . . that provides information related to eligibility . . . ." *Id*. at Bylaw 7.3.1.5.8. On that form, for which "failure to complete and sign . . . shall result in the student-athlete's ineligibility for participation in all intercollegiate competition," the student-athlete acknowledges that he is "***responsible for knowing and understanding the application of all NCAA Division II regulations related to your eligibility***." *See* NCAA Student-Athlete Statement – Division II, https://ncaaorg.s3.amazonaws.com/compliance/d2/2025-26/2025-26D2Comp_Form25-3b_StudentAthleteStatement.pdf (emphasis added).

(*Id.* at 3.)

Thus, Plaintiff knew before playing for Miles College that his junior college counted toward his eligibility in Division II under the above bylaws, and therefore knew since at least 2022 that he would exhaust his eligibility after the 2024–2025 academic year. (*Id.*) His three-year delay shows that the injunction is "entirely unnecessary" and "any urgency to Plaintiff's request for relief is manufactured." (*Id.* at 4.) Plaintiff could have brought this challenge to the NCAA eligibility rules at any point upon matriculation at Miles College, and his alleged harm (fewer years in Division II competition than those who matriculate directly to Division II schools) "was ripe upon his enrollment." (*Id.*) If Plaintiff had brought this suit at the first opportunity, there would have been no need for a preliminary injunction, because he would have been years away from his eligibility expiring, "a trial on the merits likely could have already been concluded. Whatever urgency underlies Plaintiff's request for relief is of his own making." (*Id.* at 4 (emphasis omitted).) And this is particularly important given the fact that Plaintiff seeks a mandatory injunction which would not preserve the status quo. (*Id.* (citation omitted).)

Defendant also urges the Court to reject Plaintiff's reliance on the NCAA's waiver after the *Pavia* case to justify the delay. (*Id.*) Plaintiff claims that his delay was reasonable because a similar waiver could have been issued dealing with Division II sports and because he could have transferred to a Division I school and used the *Pavia* waiver itself.

> But Plaintiff knows neither of these scenarios were guaranteed. Nor did they ever come to fruition. His reliance on what were, at best, possibilities as an excuse for his delay is misguided and unsupported by any legal authority. The speculative prospect of non-judicial relief ***does not excuse a months-long delay in seeking an injunction***. *GoNannies, Inc. v. GoAuPair.com, Inc.*[,] 464 F. Supp. 2d 603, 608–09 (N.D. Tex. Dec. 7, 2006) (explaining that, despite settlement discussions amongst the parties that could have resolved the alleged harm, the possibility for non-judicial resolution did not excuse a 6-month delay in seeking an injunction). Waiting to see if one should avail himself of his purported rights is no different than "sleeping" on the same.

(*Id.* at 4–5.)

Here, Plaintiff's reliance was not reasonable, as the *Pavia* waiver applied on its face only to Division I. (*Id.* at 5.) "The NCAA's divisions are separately governed, and [Division I] does not have any governing authority over [Division II], and vice-versa. Plaintiff offers no explanation for why he could reasonably rely on the mere possibility that [Division II] might take action to support his delay in taking action of his own." (*Id.* at 5–6 (citations omitted).)

Likewise, Defendant says, Plaintiff admits to waiting months before starting to investigate the possibility of transferring to Division I, "and he offers no proof that this path was ever a legitimate possibility." (*Id.* at 6.) Plaintiff purports to have had "discussions" with an unnamed Division I school, but he "offers no proof that any athletic opportunities ever existed for him at the [Division I] level. At best, Plaintiff speculates about theoretical opportunities that might have been available to him had he earned enough transferable credits to attend a [Division I] member institution. Speculation does not justify delay." (*Id.* (citing *GoNannies, Inc.*, 464 F. Supp. at 608–

09).) In any event, Plaintiff claims irreparable harm if he cannot transfer to a Division II school, not a Division I one, so any allegation about a possible transfer to Division I school is a "red herring." (*Id.*) Plaintiff lacked diligence "in keeping the option of [Division II] open to him through timely seeking injunctive relief—during any discussions about potential transfer to a [Division I] program[,]" and that is further proof of a lack of irreparable harm.

Finally, Defendant contends that any relief Plaintiff could obtain at the end of the case would be sufficient. (*Id.*) If Plaintiff gets a permanent injunction, he could use his eligibility following the conclusion of the case. "There is no evidence in the record that he has been promised a roster spot if declared eligible for next season, nor that—if granted eligibility at a later date—he would not be welcomed back to the team." (*Id.*)

### B.  Applicable Law

At the outset, the Court notes that, where, as here, Plaintiff seeks mandatory relief rather than maintaining the status quo, his burden is higher; mandatory preliminary relief, "which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Three Expo Events, L.L.C. v. City of Dall., Tex.*, 182 F. Supp. 3d 614, 622 (N.D. Tex. 2016) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). Because "[a]n indispensable prerequisite to issuance of a preliminary injunction is prevention of irreparable injury[,] [o]nly in rare instances is the issuance of a mandatory preliminary injunction proper." *Tate v. Am. Tugs, Inc.*, 634 F.2d 869, 870 (5th Cir. 1981) (internal quotation marks omitted). As one court explained: "The requested TRO will not function to preserve the status quo by preventing irreparable harm until the preliminary injunction hearing. . . . the[] request for a TRO will not preserve the status quo. To the contrary, it would

completely disrupt the status quo." *O'Reilly v. U.S. Army Corps of Eng'rs*, No. 21-1027, 2022 WL 137026, at *3 (E.D. La. Jan. 14, 2022).

Even under the usual requirements for these motions, "[a] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PASI*, 334 F. Supp. 3d at 789–90 (citing, *inter alia*, *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) (stating that it has "cautioned" this point "repeatedly")). "Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the . . . preliminary injunction." *Id.* at 790 (citing *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 607 (N.D. Tex. 2006)).

Again, to obtain a preliminary injunction, Plaintiff must establish, *inter alia*, "that there is a substantial threat that it will suffer irreparable injury if the district court does not grant the injunction[.]" *PASI*, 334 F. Supp. 3d at 789 (citation omitted). Under this requirement, "[t]he law is well-established that:"

> [D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.

*Id.* at 799 (quoting *Gonannies*, 464 F.Supp.2d at 609). "Wright and Miller similarly recognizes: 'A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.'" *Id.* (quoting 11A Charles A. Wright, Arthur R. Miller, et al., *Federal Practice and Procedure*, § 2948.1 (3d ed. 2018)).

> Unlike a defense based upon the statute of limitations, mere delay is not sufficient to bar injunctive relief on the ground of laches. . . . Delay coupled with knowledge and acquiescence in the acts

> complained of, as well as prejudice to defendant generally will be a
> sufficient basis for denying injunctive relief. . . . The defense of
> laches is equitable in nature and the court must look at all the factors
> or circumstances relevant to a given case when deciding whether
> relief should be barred. Thus, a lapse of time because of plaintiff's
> ignorance of his rights or his disability or in some situations, even
> neglect, when it is not attributable to a lack of diligence, should not
> bar the issuance of an injunction.

*Id.* (quoting Wright & Miller, *supra*, at § 2946).

Nevertheless, this Court has recognized that delays of only a few months can warrant denying a motion for preliminary injunction. *See also Atchafalaya Basinkeeper v. U.S. Army Corps of Eng'rs*, No. 18-23, 2019 WL 491312, at *2 (M.D. La. Feb. 7, 2019) (Dick, C.J.) (citing *Gonannies, Inc. v. GoAuPair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (citing *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995) (vacating preliminary injunction where movant waited four (4) months to seek a preliminary injunction after filing suit); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (ten (10) week delay in seeking injunction for trademark infringement undercut claim of irreparable harm); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming district court's denial of temporary injunctive relief where movant, among other things, delayed three (3) months in making its request) (descriptions of authority quoted from *Gonannies*))). Indeed, excessive delay can be found even where a plaintiff is trying to resolve the situation amicably. *See Gonannies*, 464 F. Supp. 2d at 609 (noting that six-month delay in filing motion from discovery of infringing conduct was not justified, even when plaintiff filed the motion "only after settlement negotiations had soured.").

### C. Analysis

The central issue is whether Plaintiff unreasonably delayed in bringing his action so as to warrant a finding that he did not "clearly carr[y]" his burden of establishing irreparable harm and thus obtaining the "extraordinary remedy" of a preliminary injunction, *PASI*, 335 F. Supp. 3d at

789–90 (citation omitted), which should be granted only in "rare instances" for mandatory injunctions. *Tate*, 634 F.2d at 870. In short, the Court finds that his delay was excessive and unreasonable.

More specifically, the Court concludes that Plaintiff has delayed numerous times in bringing the instant motion. As Defendant points out, Plaintiff began playing for Miles College, a Division II school, in the 2022–2023 academic year. (Walker Decl. ¶ 5, Doc. 4-6.) Plaintiff was required to sign the NCAA Division II Student-Athlete Statement, which states in relevant part:

> Bylaw 7.3.1.5.8 provides that a failure to complete and sign the annual eligibility statement shall result in the student-athlete's ineligibility for participation in all intercollegiate competition. Accordingly, you must legibly complete the information above and sign all parts below in order to be eligible to participate in intercollegiate competition.
>
> Before you sign this form, you should read the eligibility provisions of the NCAA Division II Manual or the Summary of NCAA Regulations, or another similar outline or summary of NCAA regulations, in each case, in the form provided to you by your director of athletics. You are responsible for knowing and understanding the application of all NCAA Division II regulations related to your eligibility. If you have any questions, you should discuss them with your director of athletics (or their official designee).

https://ncaaorg.s3.amazonaws.com/compliance/d2/2025-26/2025-26D2Comp_Form25-3b_StudentAthleteStatement.pdf. Thus, despite being required to sign this statement in 2022, Walker waited years before bringing any lawsuit—indeed, until less than two months before the August 11 deadline. This multi-year delay clearly fails to show irreparable harm under the above authorities. *See Atchafalaya Basinkeeper*, 2019 WL 491312, at *2 (collecting cases).

Even assuming that was not dispositive, Plaintiff is factually and legally wrong to claim that he acted diligently by pursuing other avenues of relief before resorting to the instant motion. Factually, Plaintiff attests that his last game was March 5, 2025, and that he "was advised . . .

[s]hortly after . . . that [he] had exhausted [his] NCAA eligibility" and thus could not play at any Division II school. (Walker Supp. Decl. ¶¶ 3–4, Doc. 17-1.) Plaintiff attempted to pursue a Division I scholarship,[1] but, as Defendant notes, Plaintiff fails to explain why he could not explore such opportunities *while at the same time seeking relief in this Court*. (*Id*. ¶ 4). Instead, Plaintiff delayed over three months before filing this motion. Again, such delay militates against a finding of irreparable harm under the above authorities. *See Atchafalaya Basinkeeper*, 2019 WL 491312, at *2 (collecting cases). At the very least, Plaintiff has not "clearly carried" his burden of showing irreparable harm. *PASI*, 335 F. Supp. 3d at 789–90 (citation omitted).

Legally, Plaintiff's due diligence argument also fails; as *Gonannies* recognized, even settlement negotiations do not always excuse a party's undue delay in seeking injunctive relief. 464 F. Supp. 2d at 609. If such extra-judicial efforts were not excused in *Gonannies*, then certainly the same applies here.

Ultimately, though delays can be justified with "a good explanation," *see PASI.*, 334 F. Supp. 3d at 799, here, Plaintiff has none. Plaintiff claims he was waiting to see if the *Pavia* waiver would be extended to Division II schools, but this is unreasonable; the *Pavia* waiver has been in effect since December 23, 2024, and Plaintiff provides no reasonable basis for concluding that the NCAA would extend that waiver to Division II.

In sum, the Court agrees with the NCAA that Walker's delay was excessively long and unjustified. On that ground alone, the Court could deny Plaintiff's motion.

---

[1] The Court notes that Defendant makes a fair point that minimum detail is provided about this exploration. (*See* Walker Supp. Decl. ¶¶ 5–6, Doc. 17-1.) The only real detail Plaintiff provides is that he was advised on May 19, 2025, that his credits would not transfer completely toward the degree he wanted and that this was thus the primary barrier to him transferring. But even this is lacking; for example, Plaintiff does not explain *why* it took so long to learn this about his transfer credits, despite the fact that he sought a transfer to a Division I school in March.

Additionally, the Court reiterates that Plaintiff is seeking mandatory injunctive relief—seeking "an order restoring his eligibility to compete in NCAA Division II athletics during the 2025–2026 season." (*Pls. Mem. Supp.*, Doc. 4-1 at 2–3; *see also Compl.*, Prayer for Relief, ¶ 3, Doc. 1.) Plaintiff's prayer is thus aimed not at preserving the status quo but rather at "completely disrupt[ing]" it. *O'Reilly*, 2022 WL 137026, at *3. Such relief is "disfavored," *Three Expo*, 182 F. Supp. 3d at 622, and should only be granted "in rare instances," *Tate*, 634 F.2d at 870. This is not such an instance in light of Plaintiff's unreasonable and excessive delay.

For all these reasons, the Court finds that Plaintiff has failed to meet his burden of proving irreparable harm. As a result, Plaintiff's motion will be denied.

IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Preliminary Injunction* (Doc. 4) filed by Plaintiff Rylen Walker is **DENIED**.

**IT IS FURTHER ORDERED** that the Court's expedited briefing schedule (Doc. 12) is hereby **VACATED**, and the August 7, 2025, hearing date is hereby **CANCELED**. Defendant may file responsive pleadings to Plaintiff's *Complaint* under the usual deadlines prescribed by the Federal Rules of Civil Procedure.

Signed in Baton Rouge, Louisiana, on <u>July 1, 2025</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**